IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| REGINALD JORDAN<br>3242 Brookshire Road<br>Cleveland Heights, Ohio, 44118<br><br>                              Plaintiff,<br>       v.<br><br>THE LANDMARK COMPANIES, LLC<br>1300 W. 9th Street,<br>Cleveland, OH 44113<br><br>   **Serve also:**<br>   John Carney, Statutory Agent<br>   2001 Crocker Road, Suite 420<br>   Westlake, Ohio, 44145<br><br>   -and-<br><br>MICHAEL CARNEY<br>18898 Canyon Road<br>Fairview Park, Ohio, 44119<br><br>   -and-<br><br>JOHN M. CARNEY<br>1050 Homewood Drive<br>Lakewood, Ohio, 44107<br><br>                              Defendants. | CASE NO.:<br><br>JUDGE:<br><br>COMPLAINT FOR DAMAGES<br><br>(Jury Demanded) |

Plaintiff Reginald Jordan, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## PARTIES.

1. Jordan is an individual residing in Cuyahoga County, Ohio.

1

2. The Landmark Companies, LLC, ("Landmark") is an Ohio limited liability corporation with its principal place of business located in Cuyahoga County, Ohio.

3. Michael P. Carney is an individual residing in Cuyahoga County, and is a principal and manager for Landmark.

4. John M. Carney is an individual residing in Cuyahoga County, and is a principal and manager for Landmark.

### PERSONAL JURISDICTION.

5. Defendants hires citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

6. Jordan performed work in this judicial district for Landmark and/or was hired out of this district by Landmark.

7. This cause of action arose from or relates to events that occurred in this district, thereby conferring specific jurisdiction over Defendants.

### SUBJECT MATTER JURISDICTION AND VENUE.

8. This Court has original subject matter jurisdiction of this case under 28 U.S.C. §§1331 and 1341, inasmuch the matters in controversy are brought pursuant to the FLSA, 29 U.S.C § 216 and 42 U.S.C § 1981.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Jordan's state law claims because they derive from a common nucleus of operative facts concerning Jordan's employment with Landmark.

10. Venue is proper in this District because the wrongs herein alleged occurred in this District.

**STATUTORY COVERAGE.**

11. At all times referenced herein, Landmark formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

12. At all times referenced herein, Jordan was subject to the individual coverage of the FLSA because his job duties included ordering parts and supplies from within and from outside of Ohio need to perform restoration work, maintenance, and repairs on Defendant's properties.

13. At all times referenced herein, John M. Carney and Michael P. Carney directly supervised Jordan and were responsible for determining how Landmark would compensate its employees, including Jordan, for the hours they worked.

14. During all times material to this Complaint, Landmark was Jordan's "employer(s)" within the meaning of Section 3(d) of FLSA, 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution; and the Ohio Minimum Fair Wage Standards Act ("OMWFSA").

**FACTUAL ALLEGATIONS.**
**(Allegations Relating to Jordan's Wrongful Termination Claims).**

15. Landmark is a property management company that owns and manages three residential apartment buildings in the Cleveland, Ohio area, to include "The Shoreline" building located at 5455 N. Marginal Road; The "Perry Jordan" building located at 740 West Superior Avenue; and the "Bridgeview Apartments," located at 1300 W. 9th Street.

16. Jordan is African American.

17. Jordan is a former employee of Landmark.

18. Jordan was hired by Landmark in or around 1999.

19. Jordan worked for Landmark as a Maintenance Technician.

20. As a Maintenance Technician, Jordan's job duties included performing maintenance, restoration, and repair duties at Landmark's properties.

21. At all times referenced herein, Jordan lived in a Landmark provided apartment.

22. In or around late 2020, Michael P. Carney and John M. Carney began actively managing Landmark's properties, to include Jordan.

23. Upon information and belief, Michael P. Carney and John M. Carney took over the management of Landmark from their father, John J. Carney.

24. At the time Michael Carney and John M. Carney took over managing Landmark, there were four African American employees working in the maintenance department.

25. During 2021 and 2022, Landmark began terminating African American maintenance department employees and replacing them with Caucasian employees.

26. At all times referenced herein, Jordan and other employees of Landmark lived in Landmark provided apartments.

27. Shortly after Michael Carney and John M. Carney took over the management of Landmark, Landmark began renovating certain apartments in their properties.

28. Several of the apartments Landmark renovated belonged to Caucasian employees.

29. At the time Landmark began renovating apartments, Jordan had lived in the same apartment unit for more than twenty years.

30. At the time Landmark began renovating apartments, Jordan's apartment had not been renovated in the time he lived there, and still had the original appliances and carpet from 1999.

31. Jordan requested that his apartment also be renovated since had not been renovated in more than twenty years.

32. Landmark skipped over Jordan's apartment and did not renovate it.

33. Landmark opted to renovate the apartments of Caucasian employees while refusing to renovate Jordan's apartment because of Jordan's race.

34. Landmark's refusal to renovate Jordan's apartment, while simultaneously making renovations to the apartments of Caucasian employees was an adverse action against Jordan.

35. On or about August 23, 2022, Jordan was pushing a trash can that was missing a wheel when it leaned over and dug into the floor, causing Jordan to trip and sprain his ankle ("Ankle Injury").

36. Jordan immediately reported his Injury to his direct supervisor, Doug Barnett.

37. Barnett told Jordan to go to the hospital for his Injury.

38. Subsequently, Jordan went to the hospital, where his ankle sprain was diagnosed.

39. Jordan was given a cortisone shot and stabilizing boot for his Injury.

40. Jordan returned to work on or about August 24, 2022.

41. During the week of August 29, 2022, Jordan discussed his Injury and treatment with Tanya Sams, Landmark's Operations Manager/Property Manager ("Injury Discussion").

42. During the Injury Discussion, Jordan told Sams he had provided the hospital with his medical insurance card, and he asked if Landmark "has workmans comp."

43. Sams told Jordan she did not know if Workers Compensation "would be available" for his Injury and that she would "need to follow up with John and Mike" before she could give Jordan an answer.

44. Between September 3rd and 6th, 2022 several employees of the Maintenance Department reported that they had tested positive for Covid 19, to include Ryan (last name unknown), Tina (last name unknown), Mable (last name unknown) and another, Caucasian female (name unknown).

45. The maintenance department was closed for Memorial Day on September 5, 2022.

46. Jordan reported to work as usual on Tuesday, September 6, 2022, at approximately 8:00am.

47. By approximately 10:30am on September 6, 2022, Jordan began feeling ill with Covid-like symptoms.

48. Jordan reported to Barnett that he was beginning to feel sick with Covid-like symptoms at approximately 11:00am.

49. Barnett told Jordan to "go ahead and go home and rest."

50. Jordan followed Barnett's instructions and went home.

51. Jordan forgot to punch out when he left work for the day on September 6, 2022.

52. After returning home, Jordan took a home Covid 19 test and received a negative result.

53. Subsequently, Jordan reported to work at approximately 8:00am on September 7, 2022.

54. Upon seeing Jordan, Barnett told Jordan that John P. Carney and Michael Carney were "tripping" over the fact that Jordan had gone home sick the day before, September 6, 2022.

55. Barnett advised Jordan not to punch in and to go home and wait until he heard back from Barnett, one of the Carneys, or Sams.

56. Jordan complained to Barnett that "white employees called of for covid so why am I in trouble?"

57. Barnett agreed with Jordan and said "I don't know, I think they are angling to get rid of you."

58. Subsequently, Jordan returned to his apartment and waited to hear from someone from Landmark.

59. A few hours after Jordan returned to his apartment, he received a letter via Bonnie Speed delivery from Michael Carney stating that Jordan was being terminated because "your failure to perform work during your scheduled shift," because Jordan had not clocked out when he left work early on September 6 ("Termination Letter").

60. The Termination Letter further falsely alleged that Jordan had "failed to report to work or call off today, September 7, 2022."

61. Contrary to Michael Carney's assertions, Jordan had reported to work on September 7, 2022.

62. Michael Carney knew that Jordan had called off work sick on September 6, 2022 and had merely forgotten to clock out.

63. Defendants' stated reasons for terminating Jordan were a pretext designed to cover up the real reasons Jordan was terminated – his race and to prevent Jordan from filing a Worker's Compensation claim.

64. Upon information and belief, Defendants replaced Jordan with a non-African American employee.

65. Upon information and belief, Defendants have not hired an African American Maintenance Technician since the Carneys began operating Landmark.

66. Barnett is African American.

67. Shortly after Jordan was terminated, Barnett resigned his employment.

7

68. Barnett resigned his employment because he believed that Defendants were treating African American employees differently than non-African American employees and were engaged in a campaign to replace African American employees with non-African American employees.

69. Barnett resigned his employment because he believed that he would eventually "be next" if he stayed.

70. Jordan believes and avers that Defendants' termination of him because of his race also violated Ohio R.C. § 4112.02(A) and Title VII of the Civil Rights Act of 1964.

71. Jordan has filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission; upon receiving a Right To Sue letter and exhausting his legally required administrative remedies, Jordan intends to amend the foregoing Complaint to assert claims under these statutes.[1]

## (Allegations Relating To Jordan's Unpaid Overtime Claims).

72. At all times referenced herein, Jordan was paid on an hourly basis.

73. At all times referenced herein, Jordan reported the hours he worked on a paper timecard that he would "punch" using a machine in Landmark's maintenance office.

74. There were no time punch machines in any of the other buildings that Jordan and other Maintenance Technicians worked in.

75. At all times referenced herein, Landmark had a strict policy of not allowing Maintenance Technicians to report overtime hours.

---

[1] Jordan was forced to bring this action prior to the exhaustion of administrative remedies on these anticipated claims due to the statute of limitations on his other claims.

76. Dan Ross, the former Operations Manager for Landmark, had told Jordan that he "needed" to clock out at the end of his shift, even if he was not done working, because "overtime is not authorized."

77. Jordan would regularly work one to two hours past his scheduled shift with Ross' knowledge, but pursuant to Ross' directive, Jordan did not report those hours or get paid for them.

78. As a result of not being allowed to accurate report his hours worked, Jordan was denied overtime pay to which he was entitled.

79. In or around 2020, when the Michael Carney and John P. Carney took over the management of Landmark, Ross left Landmark and was replaced by Sams.

80. Throughout Jordan's employment, to include during the last three years of his employment, he was required to work "on-call" every other week.

81. During his "on-call" weeks, Jordan was required to respond to maintenance calls that were made between 5:00pm and 8:00am the following morning.

82. During his "on-call" weeks, Jordan was required to respond to maintenance calls within 30 minutes of receiving them, inclusive of travel time.

83. During his "on-call" weeks, Jordan was required to perform repairs and/or resolve building problems that generally took between 30 minutes and an hour to perform per call, but sometimes took 2 or 3 hours to perform.

84. Jordan often received multiple calls during each "on-call" shift, sometimes in the middle of the night, that he was required to respond to.

85. Jordan was not compensated for any of the "on-call" work he performed during the three years immediately prior to this action.

86. At all times referenced herein, Jordan was regularly scheduled to work 40 or more hours per week, exclusive of the "on call" work he periodically performed.

87. The hours Jordan spent performing "on-call" work were compensable overtime hours, which Landmark knowingly and willfully refused to pay him.

88. In or around 2020, Jordan asked Tanya how he should report his "on-call" hours since he did not report to the maintenance office when responding to calls for "on call" work and thus could not "punch" his timecard ("Time Reporting Question").

89. Tanya responded to Jordan's Time Reporting Question by telling him "after hours work doesn't get recorded, that includes on call."

90. In or around 2021, Jordan complained to Michael Carney about not being paid for responding to "on-call" service calls ("Wage Complaint").

91. Michael Carney responded to Jordan's Wage Complaint by stating that Landmark's policy was that "any overtime must be authorized in advance."

92. At all times referenced herein, Michael Carney and Tanya knew that Jordan was working past his scheduled shift and performing "on-call" work but not being paid for it.

93. Upon information and belief, John P. Carney was familiar with the Maintenance Department's "on-call" policies and procedures and was aware that Maintenance Technicians, such as Jordan, were not being paid to respond to service calls.

94. Upon information and belief, other Maintenance Technicians, to include Lee (last name unknown) and Tina (last name unknown) did not record and were not paid for their "on call" work either.

95. Landmark's failure to pay Jordan for the hours he performed "on call" work violated the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").

96. Based on the foregoing facts, although Landmark claims to have terminated Jordan for "time theft," in reality, Landmark is liable to Jordan for up to three years of wage theft.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981.

97. Jordan re-alleges and incorporates by reference the allegations set forth in paragraphs 1-96, above.

98. Defendants' discrimination against Jordan violated the rights afforded to Jordan under the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

99. By the conduct described above, Defendants intentionally deprived Jordan of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of his employment relationship with Defendants, in violation of Section 1981.

100. As a result of Defendant's discrimination in violation of Section 1981, Jordan has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Jordan to injunctive and equitable monetary relief.

101. Jordan has suffered severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

102. In their discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of Jordan, thereby entitling Jordan to an award of punitive damages.

103. To remedy the violations of the rights of Jordan secured by Section 1981, Jordan requests that the Court award him the relief prayed for below.

### COUNT II: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

104. Jordan re-alleges and incorporates by reference the allegations set forth in paragraphs 1-103, above.

105. In *Sutton v. Tomco Machining Inc.*, the Supreme Court of Ohio held that R.C. §4123.90 expresses a clear public policy against the retaliatory firing of injured employees because they seek Workers Compensation benefits, including those who are fired before they can file a Workers' Compensation claim.

106. Ohio recognizes a common law (non-statutory) tort claim for wrongful discharge in violation of public policy when an employee is fired after reporting a workplace injury to his employer but before initiating a Workers' Compensation claim.

107. Defendants violated public policy by discriminating against Jordan based on their belief that he intended to file a Workers' Compensation claim.

108. As a direct and proximate cause of Defendants' conduct, Jordan has suffered and will continue to suffer damages.

### COUNT III: VIOLATION OF THE FAIR LABOR STANDARDS ACT BASED ON THE FAILURE TO PAY OVERTIME.

109. Jordan re-alleges and incorporates by reference the allegations set forth in paragraphs 1-109, above.

110. The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for all work performed in excess of 40 hours in a work week.

111. At all times referenced herein, Jordan was non-exempt from the overtime provision of the FLSA.

112. Jordan regularly worked in excess of forty (40) hours per week but Defendants failed to pay him overtime.

113. Defendant's pay practices with respect to overtime was not accidental or based on a good-faith interpretation or understanding of the FLSA; Defendants deliberately concocted a scheme to deprive Jordan and other Maintenance Technicians of the overtime pay they earned.

114. Defendants never received any legal advice from an attorney or law firm that their failure to pay Maintenance Technicians for "on-call" work or to pay for hours worked beyond those scheduled was lawful.

115. Defendants' failure to pay Maintenance Technicians for "on-call" work or to pay for hours worked beyond those scheduled was never audited, reviewed, or approved of by the Department of Labor.

116. Defendants did not rely on any Department of Labor regulation or opinion letters to devise or create the overtime policies and/or practices described herein.

117. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

118. Jordan is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

## COUNT IV: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. §§ 4111.03,, *et seq*, BASED ON FAILURE TO PAY OVERTIME.

119. Jordan re-alleges and incorporates by reference the allegations set forth in paragraphs 1-118, above.

120. At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the Ohio Minimum Fair Wage Standards Act ("OMFWSA").

121. At all relevant times, Defendants employed and continues to employ, "employees," within the meaning the OMFWSA.

122. Jordan was an employee of Defendants as that term is defined by the OMFWSA.

123. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

124. Defendants failed to pay Jordan overtime compensation for all hours he worked in excess of 40 per week.

125. In denying Jordan overtime compensation, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

126. As a direct and proximate result of Defendants' unlawful conduct, Jordan has suffered and will continue to suffer a loss of income and other damages.

127. Having violated the OMFWSA, Defendants are liable to Jordan pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable attorneys' fees.

## COUNT V: VIOLATION OF THE OHIO PROMPT PAY ACT.
### (Asserted Against Landmark Only).

128. Jordan re-alleges and incorporates by reference the allegations set forth in paragraphs 1-141, above.

129. The Ohio Prompt Pay Act ("OPPA") required GFS to pay Jordan all wages on or before the first day of each month, for wages earned by Jordan during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by Jordan during the last half of the preceding calendar month. See O.R.C. § 4113.15(A).

130. Jordan was not paid all wages due, i.e, overtime, within 30 days of his performing the work that entitled him to the wages. See R.C. §4113.15(B).

131. Jordan's unpaid overtime remains unpaid for more than 30 days beyond his regularly scheduled payday.

132. Jordan has been harmed and continues to be harmed by Landmark's acts and/or omissions as described herein and is entitled to the greater of $200.00 or an additional six percent on the total amount of wages due to him. See O.R.C. § 4113.15(C).

## PRAYER FOR RELIEF.

WHEREFORE, Plaintiff Reginal Jordan requests judgment in his favor against Defendants, containing the following relief:

(a) An order directing Defendants to place Jordan in the position he would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Jordan;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Jordan for all monetary and/or economic damages, including, but not limited

to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Jordan for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Jordan for harm to their professional and personal reputation and loss of career fulfillment;

(e) Awarding Jordan unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(f) Awarding Jordan all damages and remedies provided for under Ohio R.C. § 4111.03 and 4113.15, *et seq*,

(g) An award of punitive damages;

(h) An award of costs that Jordan has incurred in bringing this action, as well as reasonable attorneys' fees to the fullest extent permitted by law; and

(i) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Reginald Jordan*

## JURY DEMAND

Plaintiff Reginal Jordan demands a trial by jury by the maximum number of jurors permitted.

                                                       */s/ Chris P. Wido*
                                                       Chris P. Wido (0090441)
                                                       **SPITZ, THE EMPLOYEE'S LAW FIRM**